**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **KAREN A. SCHOTTELKOTTE,** individually, and on behalf of all others similarly situated,<br><br>    **Plaintiff,**<br><br>v.<br><br>**HARD ROCK CASINO CINCINNATI, LLC,**<br><br>    **Defendant.** | **Case No. 1:24-cv-00268-MWM** |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

For the reasons stated in the accompanying Memorandum of Law, Plaintiff Karen A. Schottelkotte, on behalf of herself and the settlement collective she seeks to represent, moves this Court to approve the parties' FLSA collective action settlement and provide an order containing the following relief: (1) approval of the parties' FLSA collective action settlement as a fair and reasonable resolution of a bona fide dispute; (2) approval of the proposed notice plan; (3) approval of Plaintiff's counsel's application for attorneys' fees and reimbursement of reasonable litigation costs; (4) approval of the requested service award for Plaintiff Schottelkotte; (5) implementing the Settlement Agreement in all respects; and (6) binding those collective members to the terms of the Settlement Agreement who timely submit a Consent to Join and Release form and thereby elect to participate in the case and the settlement.[1]

---

[1] Defendant Hard Rock Casino Cincinnati, LLC does not oppose this Motion or the relief requested by Plaintiff, but this does not constitute Defendant's agreement with or endorsement of Plaintiff's litigation position or legal arguments and, as reflected in the Parties' Settlement Agreement, Defendant denied liability but entered into this agreement to avoid the ongoing uncertainty and costs associated with the litigation.

Plaintiff requests the entry of the Proposed Order Approving FLSA Collective Action Settlement, attached as Exhibit 2 to the contemporaneously filed Memorandum of Law supporting this Motion. Plaintiff's counsel will contemporaneously send a Word version to the Court's Chambers by email.

Dated:  August 8, 2025

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**
J. Corey Asay
312 Walnut Street, Suite 1600
Cincinnati, Ohio 45202
T: (513) 318-4496
F: (513) 318-4496
E: casay@hkm.com

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, MO Bar No. 43450
*Admitted pro hac vice*
Alexander T. Ricke, MO Bar No. 65132
*Admitted pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:  hanson@stuevesiegel.com
Email:  ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
*Admitted pro hac vice*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone:     816-781-0002
Facsimile:     816-781-1984
Email:  ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
<u>APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.     FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

II.    ISSUES TO BE DECIDED ................................................................................... 4

III.   SUMMARY OF THE ARGUMENT .................................................................... 4

IV.   SUMMARY OF THE SETTLEMENT TERMS ................................................. 4

     A.    Monetary Awards and Release of Claims .............................................. 4

     B.    Settlement Administration and Distribution .......................................... 7

V.    ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS ............................................................................................... 8

VI.   THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE ..................................... 9

     A.    The Proposed Settlement is the Product of Contested Litigation. ........................ 10

     B.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties. ....................................................... 10

          1.    A Bona Fide Dispute Between the Parties Existed Over Liability. .......... 10

          2.    The Proposed Settlement is Fair and Reasonable ................................... 13

               i.    The Settlement was Fairly and Honestly Negotiated ................... 13

               ii.    The Ultimate Outcome of the Ligation was Unknown ................ 13

               iii.   The Value of the Settlement is Meaningful ................................. 14

               iv.   Plaintiff's Counsel and Named Plaintiff Support the Settlement . 15

VII.  THE REQUESTED SERVICE AWARD SHOULD BE APPROVED ........................... 17

VIII. THE PAYMENT OF PLAINTIFF'S COUNSEL'S ATTORNEY'S FEES AND LITIGATION EXPENSES SHOULD BE APPROVED ................................................. 18

     A.    A One-Third Fee for Plaintiff's Counsel Is Reasonable. ...................................... 18

          1.    Value of the Benefit Provided .................................................................. 19

2. The Value of the Services on an Hourly Basis ........................................ 19

3. Fee Arrangement ................................................................................... 21

4. Societal Interest ................................................................................... 22

5. Case Complexity and Risk .................................................................. 22

6. Skill and Reputation of Counsel ......................................................... 22

B. Plaintiff's Counsel's Expenses Should Be Approved ........................................ 23

IX. CONCLUSION .......................................................................................................... 23

CERTIFICATE OF SERVICE .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

Cases

*A.H. Phillips, Inc. v. Walling*,
    324 U.S. 490 (1945)...................................................................................................... 22

*Adams v. Aztar Indiana Gaming Co., LLC*,
    587 F. Supp. 3d 753 (S.D. Ind. 2022) ...................................................................... 15

*Adams v. Aztar Indiana Gaming Co.*, LLC,
    2023 WL 6536785 (S.D. Ind. Aug. 11, 2023) ........................................................ 16

Ad*cock–Ladd v. Secretary of Treasury*,
    227 F.3d 343 (6th Cir.2000) ..................................................................................... 20

*Bartakovits v. Wind Creek Bethlehem LLC*,
    2022 WL 702300 .............................................................................................. 14, 16

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................. 22

*Blum v. Stenson*,
    465 U.S.  (1984)........................................................................................................ 19

*Bowling v. Pfizer*,
    102 F.3d 777 (6th Cir. 1996) ................................................................................... 19

*Carr v. Bob Evans Farms, Inc.*,
    2018 WL 7508650 (N.D. Ohio July 27, 2018) ......................................................... 8

*Chrapliwy v. Uniroyal, Inc.*,
    670 F.2d 760 (7th Cir.1982) ..................................................................................... 20

*Clark v. A&L Homecare & Training Ctr.*, LLC,
    68 F.4th 1003 (6th Cir. 2023) .................................................................................. 12

*Connectivity Sys. Inc. v. Nat'l City Bank*,
    2011 WL 292008 (S.D. Ohio Jan. 25, 2011) .......................................................... 22

*Cornell v. WorldWide Business Servs. Corp.*,
    2015 WL 6662919 (S.D. Ohio Nov. 2, 2015)......................................................... 14

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir.2004) ..................................................................................... 20

*Gentrup v. Renovo Servs.*, *LLC*,
    2011 WL 2532922 (S.D. Ohio June 24, 2011) ....................................................... 22

*Hadix v. Johnson*,
    65 F.3d 532 (6th Cir.1995) .................................................................................. 20

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) ............................................................................... 17

*Hainey v. Parrot*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ............................................................... 10

*Hart v. RCI Hosp. Holdings, Inc.*,
    2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) .................................................... 17

*Hebert v. Chesapeake Operating, Inc.*,
    2019 WL 13198114 (S.D. Ohio Nov. 7, 2019) ....................................................... 8

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
    225 F.R.D. 616 (S.D. Cal. 2005) ........................................................................ 10

*Holt v. Rite Aid Corp.*,
    333 F.Supp.2d 1265 (M.D. Ala. 2004) ............................................................... 12

*In re Cardinal Health Inc. Sec. Litigations*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ............................................................... 21

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ..................................................................... 23

*James v. Boyd Gaming Corp.*,
    2021 WL 794899 (D. Kan. Mar. 2, 2021) ........................................................... 15

*James v. Boyd Gaming Corp.*,
    2022 WL 4482477 (D. Kan. Sept. 27, 2022) ...................................................... 16

*Johnson v. Midwest Logistics Sys., Ltd.*,
    2013 WL 2295880 (S.D. Ohio May 24, 2013) .................................................... 17

*Koszyk v. Country Fin.*,
    2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ..................................................... 17

*Larson v. Isle of Capri Casinos, Inc.*,
    2018 WL 6495074 (W.D. Mo. Dec. 10, 2018) ................................................... 15

*Linneman v. Vita-Mix Corp.*,
    970 F.3d 621 (6th Cir. 2020) ............................................................................... 19

*Lockett v. Pinnacle Ent., Inc.*,
    2021 WL 960424 (W.D. Mo. Mar. 12, 2021) ..................................................... 15

*Lopez v. Silfex, Inc.*,
  2021 WL 5795280 (S.D. Ohio Dec. 3, 2021) ........................................................ 9

*Louisville Black Police Officers Org. v. City of Louisville*,
  700 F.2d 268 (6th Cir. 1983) .............................................................................. 20

*Lynn's Food Stores, Inc. v. U.S.*,
  679 F.2d 1350 (11th Cir. 1982) ............................................................................ 9

*MacMann v. Tropicana St. Louis, LLC*,
  2021 WL 1105500 (E.D. Mo. Mar. 23, 2021) ..................................................... 15

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) .............................................................................. 13

*O'Bryant v. ABC Phones of North Carolina, Inc.*,
  2020 WL 4493157 (W.D. Tenn. Aug. 4, 2020) ...................................................... 9

*Osman v. Grube, Inc.*,
  2018 WL 2095172 (N.D. Ohio May 4, 2018) ............................................ 8, 13, 21

*Pasquale v. Tropicana Atl. City Corp.*,
  2022 WL 2816897 (D.N.J. July 19, 2022) ........................................................... 15

*Puglisi v. TD Bank, N.A.*,
  2015 WL 4608655 (E.D.N.Y. July 30, 2015) ...................................................... 18

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ............................................................................ 19

*Rawlings v. BMW Fin. Servs. NA, LLC*,
  2022 WL 2965294 (S.D. Ohio July 27, 2022) ..................................................... 18

*Rawlings v. Prudential-Bache Prop., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ................................................................................. 18

*Reich v. Homier Distrib. Co.*,
  362 F.Supp.2d 1009 (N.D. Ind. 2005) ................................................................ 12

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
  2010 WL 2490989 (N.D. Ohio June 15, 2010) .................................................... 18

*Sand v. Greenberg*,
  2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011) ........................................................ 17

*Schaefer v. Walker Bros. Enterprises*,
  2014 WL 7375565 (N.D. Ill. Dec. 17, 2014) ...................................................... 12

*Smith v. Fifth Third Bank*,
   2021 WL 11713313 (S.D. Ohio Aug. 31, 2021) ....................................................... 21

*Swigart v. Fifth Third Bank*,
   2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................. 19, 22

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 F. App'x 496 (6th Cir. 2011) ........................................................................... 18

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) .................................................................................. 16

**Statutes**

29 U.S.C. § 203 ................................................................................................................ 11

29 U.S.C. § 216 ................................................................................................................ 11

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 2, 3

Fed. R. Civ. P. 26 .......................................................................................................... 2, 3

Fed. R. Civ. P. 30 ............................................................................................................... 3

**Regulations**

29 C.F.R. § 531.59 ........................................................................................................... 11

Plaintiff Karen A. Schottelkotte worked as a table games dealer at Defendant's Hard Rock Casino in Cincinnati, Ohio where she dealt table games like blackjack, roulette, and craps. Like many of her dealer and food and beverage colleagues on the casino floor, Hard Rock paid her a sub-minimum wage plus tips—in other words, Hard Rock claimed a tip credit against its obligation to pay Plaintiff and other tipped workers the federal minimum wage. But, Plaintiff alleged that Hard Rock failed to comply with the FLSA's tip credit requirements and was therefore not entitled to a tip credit and owed her and other tipped workers the difference between the federal minimum wage and their direct cash wage (i.e., tip credit damages).

After completing Phase I discovery that included producing Plaintiff Schottelkotte for a deposition and taking the corporate representative deposition of Defendant, the parties engaged in settlement discussions. Through a mediation with an experienced wage and hour neutral, the parties reached a $1.2 million collective action settlement that represents nearly make-whole relief with respect to the alleged recoverable tip credit damages during the relevant period and with the estimated per capita settlement payments exceeding $1,300.00 for the 547 potential collective members with no worker's allocated settlement payment being less than $75.00.[2] For the reasons stated in this Memorandum of Law, Plaintiff requests that the Court enter her proposed order and approve the settlement, approve the proposed notice plan, approve the requested service award, and approve an award to Plaintiff's counsel for attorney's fees and expenses.[3]

---

[2]    The Settlement is memorialized in the Collective Action Settlement Agreement ("Agreement") and is attached to the Declaration of Alexander T. Ricke as Exhibit 1. Unless otherwise noted, all capitalized terms are defined in the Settlement.

[3]    Defendant Hard Rock Casino Cincinnati, LLC does not oppose this Motion or the relief requested by Plaintiff, but this does not constitute Defendant's agreement with or endorsement of Plaintiff's litigation position or legal arguments and, as reflected in the Parties' Settlement Agreement, Defendant denied liability but entered into this agreement to avoid the ongoing uncertainty and costs associated with the litigation.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2024, Plaintiff filed *Schottelkotte v. Hard Rock Casino Cincinnati, LLC*, No. 1:24-cv-00268-MWM (S.D. Ohio), a putative class and collective action alleging that Defendant violated the FLSA and Ohio state law by failing to pay the federal minimum wage to tipped workers. ECF No. 1. Specifically, Plaintiff alleged that Defendant violated the FLSA and Ohio state law by failing to properly inform its tipped employees of the FLSA's required tip credit provisions before paying them a sub-minimum direct cash wage and was thus unable to claim a tip credit. Plaintiff's Complaint requested class and collective treatment and damages in the form of unpaid minimum wages (i.e., tip credit damages), liquidated damages, attorney's fees, costs, and interest. *Id.*

On June 25, 2024, Defendant filed its Answer to Plaintiff's Class and Collective Action Complaint denying the allegations and asserting thirty-three affirmative defenses. ECF No. 14. Defendant denied that Plaintiff and other similarly situated employees had not been properly informed of the tip credit notice requirements and that Defendant violated any federal or state wage and hour laws. *Id.*

On September 6, 2024, the parties filed a joint discovery plan and report of their Federal Rule of Civil Procedure 26(f) planning meeting. ECF No. 16. Therein, the parties jointly proposed a bifurcated discovery process: the first phase would address the question of whether collective treatment under Section 216(b) of the FLSA and/or class certification under Rule 23 of the Federal Rules of Civil Procedure was appropriate in this matter; with Phase 2 addressing any further pre-trial discovery in support or defense of the underlying substantive claims for relief, as well as discovery related to any decertification motion. *Id.*  The parties included proposed dates for amendments to the pleadings, expert discovery, motions to approve Court-authorized notice to

2

potential opt-ins and/or class certification, and dispositive motions. *Id*. On September 17, 2024, following an initial status conference, the Court set Phase I deadlines. ECF No. 18.

Over the course of the following six months, the parties engaged in Phase I discovery efforts, including the submission of initial disclosures under Federal Rule of Civil Procedure 26(a), the exchange of written interrogatories and requests for production of documents, and the production of nearly 400 pages of documents. Following the exchange of written discovery and documents, Plaintiff took the deposition of Defendant's corporate representative (Defendant's Vice President of Human Resources) pursuant to Federal Rule of Civil Procedure 30(b)(6), and Defendant took the deposition of Plaintiff Schottelkotte. Both depositions took place in person in Cincinnati, Ohio. Ricke Decl. at ¶ 8.

After concluding their Phase I discovery efforts, Plaintiff prepared to move to authorize notice under Section 216(b) of the FLSA and for class certification of the Ohio state law claim under Federal Rule of Civil Procedure 23. Plaintiff prepared a motion and was prepared to file it at the time the case resolved, as explained below. Ricke Decl. at ¶ 9.

During this time, the parties also conferred and discussed the possibility of engaging in a settlement dialogue prior to the filing of any motion for Court-authorized notice to potential opt-ins and/or class action certification and discussed possible settlement structures. Ultimately, the parties agreed to exchange collective-wide wage and hour data and other information necessary to value the scope of Defendant's possible exposure. The parties discussed and agreed upon a mediator with significant experience in class and collective action litigation and specific experience resolving casino wage and hour matters. Prior to the mediation, Defendant voluntarily produced a comprehensive spreadsheet of wage and payroll data identifying total hours worked by putative class and collective members during the period that allowed the parties to formulate tip

credit damage models for mediation that valued the parties' limitation period arguments. Ricke Decl. at ¶ 10

In early June, the parties mediated this case with Frank Neuner of Neuner Mediation & Dispute Resolution. After a substantive, all-day session, the parties reached the material terms of the settlement now before the Court with Mr. Neuner's assistance. Ricke Decl. at ¶ 11. The parties now submit a fully executed Settlement Agreement for the Court's review and approval.

## II.     ISSUES TO BE DECIDED

Whether the Court should grant Plaintiff's motion to approve the parties' collective action settlement, including approving: (1) potential settlement payments to the members of the settlement collective; (2) the proposed notice plan; (3) a service award of $10,000.00 to Plaintiff Schottelkotte; (4) Plaintiff's counsel's attorney's fees in the amount of $400,000.00 (one-third of the fund); and (5) Plaintiff's counsel's litigation expenses in the amount of $22,825.94.

## III.     SUMMARY OF THE ARGUMENT

The settlement is a fair and reasonable resolution of a bona fide dispute between the parties. The Court should enter the proposed Order (Ex. 2) and allow notice to issue to putative collective members so that they can receive the meaningful payments provided under the settlement.

## IV.     SUMMARY OF THE SETTLEMENT TERMS

### A.     MONETARY AWARDS AND RELEASE OF CLAIMS

For purposes of this Agreement, the Settlement Collective is defined as: all non-restaurant employees of Defendant (i.e., the Settlement Collective excludes employees working at Hard Rock Café, YouYu, and Council Oak) who earned a direct cash wage of $7.24 per hour or less from May 8, 2022 through October 17, 2024 (the "Relevant Period"), and who were identified by

Defendant on the employee data spreadsheet the parties used for purposes of mediation and settlement.[4]

Defendant has agreed to pay a maximum settlement amount of $1,200,000.00 to settle the claims in this litigation, which shall be used to provide for (1) all potential settlement payments to the Settlement Collective, (2) Plaintiff's counsel's attorney's fees (one-third of the fund, or $400,000.00) and litigation expenses of $22,825.94 (less than the $30,000.00 provided for the by the Settlement Agreement), (3) Plaintiff Schottelkotte's service award of $10,000.00, (4) settlement administration costs of $13,000.00; and (5) a modest $5,000.00 reserve fund to correct any omissions.  *Id.* at ¶¶ III.B.1; III.B.6.

The "Net Settlement Fund" represents the settlement proceeds that remain after the above-identified deductions (as specified in items 2 through 5 in the preceding paragraph) are taken from the gross fund. The Net Settlement Fund will be divided among the Settlement Collective on a pro rata basis using the computations described in Paragraph III.B.2.b. of the Agreement:

(1)     First, the Net Settlement Fund will be calculated by removing the following from the Maximum Settlement Amount: Plaintiff's Counsel's attorney's fees and litigation expenses (as described in Paragraph III.B.3.), the Named Plaintiff's service award (as described in Paragraph III.B.5.), settlement administrator costs (as described in Paragraph III.B.4.), and reserve fund (as described in Paragraph III.B.6.).

(2)     Second, each member of the Settlement Collective will be allocated a Seventy-Five Dollars and Zero Cents ($75.00) minimum payment in recognition of the release they would be providing to Defendant should they opt-in; and

---

[4] The scope of this Settlement Collective reflects the stipulation and agreement reached by Plaintiff's counsel in this Litigation and Plaintiff's counsel in *Francis v. Hard Rock Cincinnati Casino, LLC*, Case No. 1:23-cv-00760-TSB (improperly named in the Complaint as Hard Rock Café International (STP), Inc.), that all wage and hour-related claims asserted, or that could be asserted, in this Litigation apply solely to non-restaurant employees at the Hard Rock Casino Cincinnati and all wage and hour-related claims asserted, or that could be asserted, in the *Francis* case apply solely to the restaurant employees. Ricke Decl. at ¶ 7.

(3)    Third, the amount remaining in the Net Settlement Fund will be allocated to Settlement Collective members pro rata by comparing each Settlement Collective member's potential tip credit damages against the total potential tip credit damages for all Settlement Collective members for the period of May 8, 2022 through October 17, 2024, as determined by using the employee data spreadsheet the Parties used for purposes of mediation and settlement. The measure of tip credit damages is the difference between a Settlement Collective member's direct cash wage and the Seven Dollars and Twenty-Five Cents ($7.25) federal minimum wage for each hour worked during the relevant time period.

Only Settlement Collective members who timely sign and submit a Consent to Join and Release Form as provided in the Agreement will receive their allocated Settlement Payment. Settlement Collective members will not receive a Settlement Payment if they fail to timely submit a Consent to Join and Release Form in accordance with Paragraph III.D of the Agreement—those individuals will also not release claims. The Settlement Payments allocated to those Settlement Collective members who do not timely submit a Consent to Join and Release form will return to Defendant as they are not receiving a release for those claims.

The settlement administrator will be responsible for calculating each Settlement Collective member's allocated settlement amount based on the payroll data provided by Defendant and used by the parties for purposes of mediation and settlement. Net of all fees and costs, the average estimated, allocated settlement amount exceeds $1,300.00 per capita and no collective member's allocated settlement amount will be less than $75.00. Ricke Decl. at ¶¶ 13-14.

In exchange for the settlement amounts paid pursuant to the Agreement, each member of the Settlement Collective, who elects to participate in the settlement by timely submitting a Consent to Join and Release form, agrees to release Defendant from all federal, state, and local wage and hour claims, as well as any related common law, contractual, and/or equitable claims, that were or could have been asserted based on the facts alleged in the operative Complaint through June 5, 2025 ("Released Claims"). Agreement at ¶ III.C.

### B.    SETTLEMENT ADMINISTRATION AND DISTRIBUTION

Within fourteen (14) days of approval of the Settlement, the settlement administrator will send to Settlement Collective members a notice of settlement ("Notice") by first class U.S. mail to their last known address in the form attached as Exhibit A to the Agreement (or in the form otherwise approved by the Court).  The Notice will inform Settlement Collective members of their legal rights and options under the Agreement and identify their estimated individual Settlement Payment. The settlement administrator alone is responsible for mailing the Notices to the Settlement Collective. Agreement at ¶ III.D.3.

The mailing to Settlement Collective members will also include a Consent to Join and Release Form attached as Exhibit B to the Agreement (or in the form otherwise approved by the Court) and a postage pre-paid, pre-addressed return envelope. The Consent to Join and Release Form will include language by which the Settlement Collective member consents to join and opts into the case and agrees to participate in the settlement, along with an acknowledgment and agreement to release claims as set forth in and covered by the settlement. The Notice will instruct them that to participate in the settlement and receive a Settlement Payment under the settlement, they must complete and sign the Consent to Join and Release Form and return it to the settlement administrator postmarked no later than sixty (60) days after the date notice was initially mailed ("Opt-In Period"). Alternatively, the Notice explains that those who do not sign and timely return a Consent to Join and Release form will not receive a Settlement Payment, will not be subject to the judgment in this case, will not release claims, and the lawsuit and settlement will have no effect on them. Agreement at ¶ III.D.4.-7.

For any Consent to Join and Release form returned as "undeliverable" during the Opt-In Period, the settlement administrator will forward them to any forwarding address provided by the U.S. postal service. If no such forwarding address is provided, the settlement administrator will

perform a skip trace to attempt to obtain the most recent address for such person. Agreement at ¶ III.D.6.

The Settlement Agreement provides for a period of sixty (60) days ("Opt-In Period") during which Settlement Collective members can return their Consent to Join and Release Forms. There is also a process for the settlement administrator's handling of deficient Consent to Join and Release Forms, which provides Settlement Collective members with a reasonable opportunity to cure deficiencies. *Id*. Settlement checks are to be mailed within thirty (30) days after the end of the Opt-In Period and can be presented for payment for ninety (90) days. After that, any settlement checks not presented for payment will be transmitted by the settlement administrator to the Ohio Division of Unclaimed Funds to be held for that Settlement Collective member. *Id*. at ¶ III.F. Further, any portion of the Maximum Settlement Amount that was allocated to a Settlement Collective member who does not return a Consent to Join will be returned to Defendant because those individuals who do not participate will not release claims. *Id.* at ¶ III.B.9.

## V. ONE-STEP APPROVAL IS APPROPRIATE FOR FLSA COLLECTIVE ACTION SETTLEMENTS

Courts regularly apply a one-step approach to determine whether an FLSA settlement should be approved. "A one-step settlement approval process in FLSA collective actions is appropriate." *Osman v. Grube, Inc.*, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018); *see also Carr v. Bob Evans Farms, Inc.*, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018) ("To approve an FLSA collective action settlement, a district court need only engage in a one-step process"); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 13198114, at *3 (S.D. Ohio Nov. 7, 2019) (approving FLSA collective action settlement and noting that "a one-step settlement approval process is appropriate."). The same is true here.

## VI.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE

"In reviewing a settlement proposed by the parties in a suit brought by employees under the FLSA against their employer, a district court must determine whether the proposed settlement represents a 'fair and reasonable resolution of a bona fide dispute.'" *Lopez v. Silfex, Inc.*, No. 3:21-CV-61, 2021 WL 5795280, at *3 (S.D. Ohio Dec. 3, 2021) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-55 (11th Cir. 1982)). As part of that analysis, the Court should also confirm that "the proposed procedures for effectuating the proposed settlement are proper," including that the prospective opt-ins are similarly situated and that the process for doing is fair. *Lopez*, 2021 WL 5795280, at *3 (citing *O'Bryant v. ABC Phones of North Carolina, Inc.*, 2020 WL 4493157, at *9-15 (W.D. Tenn. Aug. 4, 2020)).

The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Here, the settlement approximates make-whole relief, makes meaningful payments to opt-ins, was negotiated at arm's-length through a third-party neutral, and the settlement as reached only after Phase I discovery concluded. The settlement should be approved.

9

A. **THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION.**

This case only settled after the conclusion of Phase I discovery, after Plaintiff deposed Defendant's corporate representative, and when Plaintiff was on the verge of moving for class certification. Importantly, the settlement was reached through mediation with a respected mediator and both parties had complete information about Defendant's exposure through analysis of comprehensive wage data. Moreover, the parties had a full opportunity to analyze the key factual and legal issues because Plaintiff deposed Defendant's corporate representative specifically on its contentions across the casino as to why it was entitled to claim a tip credit. Ricke Decl. at ¶¶ 8-10 "[T]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005)). The Court should conclude that the proposed settlement is the product of contested litigation.

B. **THE PROPOSED SETTLEMENT REFLECTS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE BETWEEN THE PARTIES.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a bona fide dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, both are satisfied.

1. **A Bona Fide Dispute Between the Parties Existed Over Liability.**

In this case, the settlement resolves clear and actual disputes between the parties. First, Plaintiff alleged that Defendant violated the FLSA by failing to comply with the required tip credit provisions. The claim at issue can be summarized as follows: Plaintiff alleges that Defendant paid hourly, non-exempt tipped employees, like Plaintiff, a direct cash wage that was less than the

10

federal minimum wage and claimed a "tip credit" to make up the difference between the direct cash wage and the minimum wage (i.e., credit a portion of the employees' tips as wages to meet federal minimum wage requirements). However, the FLSA has stringent notice requirements that must be met before paying a sub-minimum direct cash wage. *See* 29 U.S.C. § 203(m). The federal regulation interpreting the language of the FLSA's tip credit notice requirements explains as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b). Plaintiff alleged that Defendant failed to satisfy those requirements and was, therefore, not entitled to claim a tip credit and owed Plaintiff and all other similarly situated employees the difference between their direct cash wage and the federal minimum wage for each hour worked during the three years preceding the filing of the complaint. Defendant denied these allegations and claimed that Plaintiff and the proposed collective were properly informed of the tip credit notice requirements of the FLSA. Defendant denied that Plaintiff and the proposed collective were entitled to any relief. Plaintiff explored each and every basis for Defendant's contentions during a corporate representative deposition of Defendant. Ricke Decl. at ¶¶ 8-10.

Plaintiff believes that if her allegations were ultimately shown to have been correct, Defendant would have been faced with the prospect of a significant monetary verdict in favor of Plaintiff for unpaid minimum wages, the obligation to pay attorneys' fees, and the possibility of liquidated damages. *See* 29 U.S.C. §216(b). However, if Defendant's arguments were correct,

Plaintiff faced the risk of a complete defense verdict and no recovery of any kind. *See Schaefer v. Walker Bros. Enterprises*, 2014 WL 7375565, at *1 (N.D. Ill. Dec. 17, 2014), *aff'd*, 829 F.3d 551 (7th Cir. 2016) (granting summary judgment for employer on plaintiffs' FLSA tip credit notice claim where Defendant demonstrated sufficient notice through employee handbook, written notification, oral notification during training, and through posters describing the tip credit). The settlement removed those risks for both parties.

In addition, the parties disputed whether collective and class treatment of Plaintiff's FLSA and Ohio state law claims were appropriate. Plaintiff asserted collective and class treatment were appropriate because all members of the collective were sub-minimum wage tipped employees subject to the same policy of insufficient tip credit notice under the FLSA.[5] Defendant disagreed and suggested Plaintiff faced the risk of individualized issues precluding class and collective certification. *See Reich v. Homier Distrib. Co.*, 362 F.Supp.2d 1009, 1014 (N.D. Ind. 2005) (denying collective treatment where employers "liability to any particular sales partner will turn on a set of facts specific to that individual"); *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1274-75 (M.D. Ala. 2004) (denying collective action where individualized inquiries required would obviate "the economy of scale envisioned by the FLSA collective action procedure"). If the matter was not resolved by settlement, there was a risk that Plaintiff would not succeed in pursuing collective and class treatment of the action.

---

[5] For these reasons, the Court can be satisfied that collective treatment under Section 216(b) of the FLSA is appropriate to effectuate settlement here. That each collective member is a sub-minimum wage, tipped worker who was paid pursuant to the tip credit and commonly asserts a failing on the part of the employer (*i.e.*, failure to have a valid tip credit notice policy) shows that these workers are similarly situated. *Clark v. A&L Homecare & Training Ctr.*, LLC, 68 F.4th 1003, 1011 (6th Cir. 2023).

Moreover, the Court's supervision of the parties' settlement efforts through this motion practice as well of that of an independent mediator overseeing the negotiation process undermines any notion that the settlement is a product of collusion, or "that the one entity with a bird's eye view of the proceedings—the district court judge—somehow missed the signs that the parties were merely engaged in pretense and posturing." *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009). Accordingly, the Court should conclude that a bona fide dispute between the parties existed.

## 2.     The Proposed Settlement is Fair and Reasonable

In determining whether a FLSA settlement is fair and reasonable, courts generally examine four factors, which include whether: (1) the parties fairly and honestly negotiated the settlement; (2) serious questions of law and fact exist which place the ultimate outcome in doubt; (3) the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, the settlement is fair and reasonable. *Osman v. Grube, Inc.*, 2018 WL 2095172, at *1 (N.D. Ohio May 4, 2018). Each of these factors is satisfied.

### i.     The Settlement was Fairly and Honestly Negotiated

The settlement was the product of a third-party mediation effort. Further, the parties only settled this case at the conclusion of Phase I discovery, after all parties had been deposed, and with Plaintiff on the verge of filing a motion for Court-authorized notice to potential opt-ins and class certification. As a result, both parties had complete information at the time of settlement and were able to be clear-eyed about their likelihood of success.

### ii.     The Ultimate Outcome of the Ligation was Unknown

As outlined above, the parties disagree about the merits of Plaintiff's claims and the viability of Defendant's various defenses. If the litigation had continued, Plaintiff would have faced obstacles and uncertainties, including the outcome of motions for Court-authorized notice

13

and class certification, decertification, summary judgment, and potentially a trial and appeal. *See, e.g., Cornell v. WorldWide Business Servs. Corp.*, 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (refusing to allow collective action to proceed because workers were not similarly situated). In Plaintiff's view, this settlement provides real value now, as opposed to a possibility of value years from now, and provides a certainty of result.

### iii. The Value of the Settlement is Meaningful

The average allocated settlement amount for collective members will exceed $1,300.00 net of all fees and costs. That is a meaningful result for these workers who, by definition, earn less than minimum wage. Further, Plaintiff's counsel estimates that the $1,200,000.00 common fund represents approximately 96%[6] of the eligible collective members' actual tip credit damages (exclusive of liquidated damages) based on collective-wide wage data. *Bartakovits v. Wind Creek Bethlehem LLC*, 2022 WL 702300, at *2 (E.D. Pa. Mar. 7, 2022 (approving tip credit notice settlement in casino wage and hour class action and noting that the "the common fund represents over 57% of the unpaid minimum wages at issue."). Other tip credit notice cases show that this settlement provides meaningful relief.[7]

Moreover, eligible collective members who have not already filed a Consent to Join may elect not to participate in the settlement, and preserve their wage claims if they so choose. Given

---

[6] The parties had several disagreements about the universe of exposure due to underlying disputes about the appropriate limitations period as well as how to credit certain of Defendant's positions. But, for the most part, the parties agreed the scope of potential tip credit damages for the relevant time period (5/8/22 through 10/17/24—when Defendant issued its remedial notice) was between $1,088,871.00 and $1,250,959.00. Ricke Decl. at ¶ 15.

[7] *See, e.g., Cope v. Let's Eat Out, Inc.*, Case No. 6:16-cv-03050-SRB, ECF No. 316 at *12 (W.D. Mo. April 17, 2019) (motion for preliminary approval of class action settlement creating $650,000 common fund to resolve tip credit notice (and other unpaid wages claims) and noting "the settlement provides Opt-in Plaintiffs with 25% of their owed minimum wages."); *see id.* at ECF No. 325 (W.D. Mo. Sept. 6, 2019) (granting final approval of settlement).

the risks associated with proceeding outside a settlement, the Court should find that the modestly compromised monetary amounts under the settlement here are reasonable and proportionate. By any measure, the settlement presents a meaningful recovery weighed against the risk of the case not proceeding as a collective action and the possibility of losing on the merits at the summary judgment, trial, or appeal stages. Ricke Decl. at ¶¶ 14-16. In sum, the substantial benefit that collective members will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed settlement.

### iv. Plaintiff's Counsel and Named Plaintiff Support the Settlement

Over the last 8 years, Plaintiff's counsel have collectively litigated more than 25 class and collective wage and hour cases involving the same or similar claims against casino and gaming entertainment companies nationwide. Through this experience, Plaintiff's counsel has gained a comprehensive knowledge of the facts and legal issues relating to the parties' respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed settlement. *See* Ricke Decl. at ¶¶ 18-25.[8] Based on Plaintiff's counsel's knowledge of the case and

---

[8] Plaintiff's counsel have prevailed on key issues in casino wage and hour cases that inform their opinion that this represents a fair and reasonable settlement. *See, e.g., James v. Boyd Gaming Corp.*, 2021 WL 794899 (D. Kan. Mar. 2, 2021) (conditionally certifying tip credit notice and tip pooling claims across 13 casinos and 9 casinos, respectively); *Lockett v. Pinnacle Ent., Inc.*, 2021 WL 960424 (W.D. Mo. Mar. 12, 2021) (conditionally certifying tip pooling and gaming license wage deduction claims across 10 casinos and 8 casinos, respectively, while also certifying Missouri and Iowa state law claims under Rule 23); *MacMann v. Tropicana St. Louis, LLC*, 2021 WL 1105500 (E.D. Mo. Mar. 23, 2021) (conditionally certifying four FLSA claims at Lumiere casino, including tip credit notice and gaming license wage deductions, while also certifying Missouri state law claims under Rule 23); *Larson v. Isle of Capri Casinos, Inc.*, 2018 WL 6495074 (W.D. Mo. Dec. 10, 2018) (conditionally certifying tip credit notice and timeclock rounding claims at Isle of Capri casino); *Adams v. Aztar Indiana Gaming Co., LLC*, 587 F. Supp. 3d 753 (S.D. Ind. 2022) (granting class and conditional certification of tip credit notice, timeclock rounding, and overtime miscalculation claims); *Pasquale v. Tropicana Atl. City Corp.*, 2022 WL 2816897 (D.N.J. July 19, 2022) (granting conditional certification of tip credit notice and miscalculated regular rate claims at Tropicana Atlantic City).

the applicable law, as well as their experience in similar casino wage and hour class and collective actions, Plaintiff's counsel believe the settlement is fair and reasonable. This factor supports approval of the settlement. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs." *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).

This factor is particularly relevant here where Plaintiff's counsel have been described as "uniquely skilled and efficient in prosecuting casino wage and hour cases." *Bartakovits v. Wind Creek Bethlehem, LLC*, 2022 WL 702300, at *3 (E.D. Pa. Mar. 7, 2022) (approving a $6M settlement of tip credit notice and wage deduction claims for casino workers); *see also Adams v. Aztar Indiana Gaming Co.*, LLC, 2023 WL 6536785, at *4 (S.D. Ind. Aug. 11, 2023) (approving a $2.1M settlement of tip credit notice and other wage claims representing more than 160% of class-wide damages and noting that Stueve Siegel Hanson and McClelland Law Firm "achieved a favorable result in this action; has been appointed as class counsel in wage and hour class actions many times, … [and] has specific knowledge of wage and hour class actions against casinos"); *James v. Boyd Gaming Corp.*, 2022 WL 4482477, at *15 (D. Kan. Sept. 27, 2022) (approving a $2.3M settlement obtained by Stueve Siegel Hanson and McClelland Law Firm for a collective of casino workers asserting tip credit notice and tip pooling claims).[9] Additionally, Plaintiff—who communicated with counsel throughout the litigation and settlement process—approved the terms of settlement as evidenced by her signature on the Settlement Agreement.

---

[9] Finding that "counsel here is quite skilled in litigating wage and hour cases. The two law firms representing the collective members have extensive experience in this area of law. This skill and experience most likely contributed to their success in securing conditional certification of the two collectives and resolving the litigation through a settlement that provides significant benefits to collective members." *James,* 2022 WL 4482477, at *15

## VII.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED

The Settlement Agreement contemplates providing a $10,000.00 service award to Plaintiff Schottelkotte to acknowledge her time and effort expended in helping to achieve a successful settlement. This payment is in addition to any payment she receives as her pro rata share of the settlement. Agreement at ¶ III.B.5.

Courts may make separate awards to class and collective representatives in recognition of their risks taken, time expended, and benefits to the collective. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *see also Sand v. Greenberg*, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," against an employer, including that of "blacklisting").

Plaintiff Schottelkotte played a crucial role in this case. She sought out Plaintiff's counsel to press these claims, reviewed the complaint and initiated the lawsuit, conferred with Plaintiff's counsel on a regular basis, responded to written discovery, prepared for and sat for a full day deposition, and participated in the mediation and negotiation process. Further, Plaintiff Schottelkotte is providing a general release to Defendant. *See* Agreement, at ¶ III.C. The requested service award payment is proportional to service payments awarded to named plaintiffs in other FLSA actions. *See, e.g., Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[10]

---

[10] *See also Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Hart v. RCI Hosp. Holdings, Inc.*, 2015 WL 5577713, at *19 (S.D.N.Y. Sept. 22, 2015) (approving $15,000 service payments for each of two named plaintiffs in state and federal wage action); *Puglisi v. TD Bank, N.A.*, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving $15,000 service

## VIII.   THE PAYMENT OF PLAINTIFF'S COUNSEL'S ATTORNEY'S FEES AND LITIGATION EXPENSES SHOULD BE APPROVED

### A.      A One-Third Fee for Plaintiff's Counsel Is Reasonable.

For their efforts in delivering this meaningful result to a collective of sub-minimum wage workers, Plaintiff's counsel seek one-third of the common fund as their attorney's fees. There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993).

Courts typically employ the percentage-of-the-fund in wage and hour class and collective actions when a plaintiff obtains a good result and avoids extended litigation time and costs. *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorney's fees). In the Southern District of Ohio, "one-third of the settlement fund for attorneys' fees" is "normal in common fund settlements" and "[t]his Court has regularly approved attorneys' fees of 1/3 of the settlement fund in wage and hour cases." *Rawlings v. BMW Fin. Servs. NA, LLC,* No. 2:20-CV-02289, 2022 WL 2965294, at *7 (S.D. Ohio July 27, 2022) (collecting cases).

To assist the Court in determining whether the requested fee is reasonable, the Sixth Circuit has identified the following factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill

payments to two class representatives in combined Rule 23 class action and FLSA collective action).

and standing of counsel involved on both sides. *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1. Value of the Benefit Provided

This is a strong result for the minimum wage workers covered by this settlement. The settlement represents nearly make-whole relief of the actual tip credit damages (exclusive of liquidated damages) based on Plaintiff's counsel's analysis of collective-wide wage records and will make available per capita payments of more than $1,300.00. "Further, the settlement provides relatively early relief to [collective action] members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in discovery from individual opt-in plaintiffs, of electronically-stored information, and a potential motion to decertifiy the collective, and dispositive motions on merits and damages issues." *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014). Instead of the risks of continued litigation, the common fund represents approximately 96% of the eligible collective members' tip credit damages, exclusive of liquidated damages, at issue in this litigation (according to Plaintiff's informed analysis at mediation).

### 2. The Value of the Services on an Hourly Basis

Although the Sixth Circuit "has repeatedly said that district courts are not required to conduct a crosscheck in every case," *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020), the lodestar informs the "value of the services on an hourly basis" *Ramey* factor. For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court

of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004) (citing Ad*cock–Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir.2000)).

There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995) (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir.1982)); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy*, 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix*, 65 F.3d at 535 (citing *Chrapliwy*, 670 F.2d at 768–69).

Here, it was reasonable for Plaintiff to retain counsel from outside of the local community and to retain Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. Plaintiff's counsel's experience in prosecuting such complex actions within the industry and experience as a leader in wage and hour litigation at large, provided Plaintiff with a great benefit in terms of both effectiveness and efficiency. *See* Ricke Decl. at ¶¶ 18-30; *see also* Exhibit 3, Stueve Siegel Hanson Firm Resume. Plaintiff's counsel leveraged this experience for the benefit of the collective during settlement negotiations to achieve this result, which was preceded by an extensive period of investigation of the claims and damages in this case.

Here, to date, Plaintiff's counsel reasonably expended approximately 345 hours for a total lodestar of approximately $280,000 at Plaintiff's counsel's standard hourly rates. Ricke Decl. at ¶ 35. Thus, Plaintiff's counsel's requested fee of one-third of the fund, $400,000.00, represents a lodestar multiplier of 1.4 *Id.* This is well within the normal range in the Sixth Circuit. *See, e.g., Osman v. Grube, Inc.*, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel."); *Smith v. Fifth Third Bank*, 2021 WL 11713313, at *7 (S.D. Ohio Aug. 31, 2021) ("As for the lodestar-multiplier crosscheck on the fee award, most courts agree that the typical lodestar multiplier in a large class action ranges from 1.3 to 4.5.") (cleaned up); *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 770 (S.D. Ohio 2007) (approving 6.0 lodestar multiplier).

Further, Plaintiff's counsel's lodestar does not take into consideration future time Plaintiff's counsel will spend fulfilling their obligations in the Settlement Agreement, administration of the Settlement, and responding to Plaintiff's and collective members' inquiries, which can range between 25-50 hours for cases like this with engaged workers who work in the same building, and who are receiving large settlement payments. Ricke Decl. at ¶ 31.

### 3. Fee Arrangement

Plaintiff's counsel undertook the representation on a purely contingent basis. Ricke Decl. at ¶ 31. Thus, Plaintiff's counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect—very real in this case, considering the likely dispositive motion practice and certification/decertification motion practice—that the investment of substantial attorney time and resources would be lost. Plaintiff's counsel should be compensated for this risk. *Swigart*, 2014 WL 3447947, at *6 ("Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of

an unsuccessful outcome and no fee of any kind."). Further "[t]here is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

### 4. Societal Interest

The FLSA is a remedial statute designed to protect the wages of workers, *see A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945), and "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011). Plaintiff's counsel took on this matter to protect the rights of tipped employees and litigated against experienced and formidable defense counsel. This factor supports awarding the requested fees and will encourage other qualified counsel to represent workers on a contingency.

### 5. Case Complexity and Risk

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart*, 2014 WL 3447947, at *7 (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013)). The parties faced complex motion practice, both over the merits, as well as on the motions for Court-authorized notice and class certification. This factor supports the requested fee award.

### 6. Skill and Reputation of Counsel

All Counsel are highly qualified and experienced, and each have substantial credentials in federal courts and class and collective action litigation. Ricke Decl. ¶¶ 18-30; Ex. 3, Stueve Siegel Hanson Firm Resume. For the foregoing reasons, Plaintiff's counsel's requested attorney's fees should be approved.

### B. PLAINTIFF'S COUNSEL'S EXPENSES SHOULD BE APPROVED

Plaintiff's Counsel also seeks to recover $22,825.94 in expenses to date. Plaintiff's counsel seeks reimbursement for filing and service fees, pro hac vice fees, legal research, travel expenses, deposition expenses, and mediator's fees. Ricke Decl. at ¶¶ 36-39. The expenses are "of the type routinely charged to ... hourly fee-paying clients," and qualify for reimbursement out of the common fund settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). The expenses are detailed by category in Plaintiff's counsel's declaration. The expenses incurred are reasonable and their reimbursement should be approved. *Id*. Accordingly, the requested award of litigation costs should be approved.

## IX. CONCLUSION

The parties reached this settlement as the result of contested litigation, and it resolves a bona fide dispute between the parties. The parties engaged in significant formal and informal discovery efforts and analysis of pertinent information and resolved the issues between them with the assistance of a mediator with substantial expertise in this area. The settlement is fair, reasonable, and adequate, and provides settlement collective members with meaningful monetary relief in a contested matter. For these reasons, the Court should approve the Settlement Agreement, including, as requested, the service award for Plaintiff Schottelkotte and the attorneys' fees and litigation expenses for Plaintiff's counsel. Plaintiff respectfully requests the Court enter the Proposed Order approving the Settlement Agreement.

Dated: August 8, 2025

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**
J. Corey Asay
312 Walnut Street, Suite 1600
Cincinnati, Ohio 45202
T: (513) 318-4496
F: (513) 318-4496
E: casay@hkm.com

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, MO Bar No. 43450
*Admitted pro hac vice*
Alexander T. Ricke, MO Bar No. 65132
*Admitted pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:    816-714-7101
Email: hanson@stuevesiegel.com
Email: ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
*Admitted pro hac vice*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone:    816-781-0002
Facsimile:    816-781-1984
Email: ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2025, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

<u>*/s/ Alexander T. Ricke*</u>

**ATTORNEY FOR PLAINTIFF**

25